AO 91 (Rev. 11/11) Criminal Complaint

```
┌─────────────────────┐
│      LODGED         │
│ CLERK, U.S. DISTRICT COURT │
│    07/07/2022       │
│ CENTRAL DISTRICT OF CALIFORNIA │
│ BY:      AP    DEPUTY │
└─────────────────────┘
```

# UNITED STATES DISTRICT COURT
for the
Central District of California

```
┌─────────────────────┐
│      FILED          │
│ CLERK, U.S. DISTRICT COURT │
│     7/7/2022        │
│ CENTRAL DISTRICT OF CALIFORNIA │
│ BY:      KC    DEPUTY │
└─────────────────────┘
```

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| Rudy Junior Rodriguez, Sr. | ) | 5:22-mj-00424 |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **February 21, 2022** in the county of **Riverside** in the **Central** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(1), 924(e)(1) | Armed Career Criminal in Possession of Ammunition |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

/s/
*Complainant's signature*

Paul Kirwan, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 7/7/2022

*Judge's signature*

City and state: Riverside, California

Sheri Pym, United States Magistrate Judge
*Printed name and title*

AUSA: Peter Dahlquist

**AFFIDAVIT**

I, Paul Kirwan, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Rudy Junior Rodriguez, Sr. ("RODRIGUEZ") for a violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1) (Armed Career Criminal in Possession of Ammunition).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since May 2017. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. I am an ATF Interstate Nexus Expert and routinely examine firearms and ammunition to determine their origins and travel in interstate commerce. During my time as an ATF SA, I have testified as an expert witness in federal court, participated on multiple different task forces, and assisted in multiple

narcotics and firearms investigations. Based on my training and experience, and on my conversations with other ATF SAs, I am familiar with the investigation of federal firearms and drug crimes, and with the ways in which people who commit those crimes use their email accounts.  I have experience in processing and analyzing both computer and cell phone data, including data from email accounts, as the result of executing multiple search warrants on digital devices.  I have experience in handling and utilizing confidential informants for information as well as planning controlled purchases for firearms and narcotics.

### III. SUMMARY OF PROBABLE CAUSE

4.  On February 21, 2022, the Riverside County Sheriff's Department ("RSO") received a call for service referencing a potential armed kidnapping. Deputies responded to the scene and took RODRIGUEZ into custody, who reported to law enforcement that he was on parole for attempted murder.  Deputies searched the vehicle RODRIGUEZ was sitting in when the first deputy arrived at the scene and recovered a 9mm machine gun, loaded with six rounds of 9mm ammunition.  Both RODRIGUEZ and the vehicle he was in matched the description dispatch provided to the deputies responding to the scene.

### IV. STATEMENT OF PROBABLE CAUSE

5.  Based on my review of law enforcement reports, conversations with other law enforcement agents, my own knowledge of the investigation, my review of RSO incident report

with file number I220520013, and my review of body-worn camera recordings, I learned the following:

### A. RSO Unit Sent to Gas Station to Respond to 911 Call and Report of Armed Kidnapping

6. On February 21, 2022, Deputy M. Murray was working patrol in the City of San Jacinto within Riverside County, when, at approximately 7:42 a.m., he was dispatched to a call of a reported armed kidnapping. The dispatcher informed Deputy Murray that Victim 1[1] called 911 and reported she was being held hostage at gunpoint and she was hiding in the bathroom of the Arco gas station located on Ramona Boulevard in San Jacinto. Victim 1 described two suspects. One suspect was a Hispanic male adult about 30 years old, wearing all white. The second suspect was a Hispanic male adult about 20 years old, wearing a black shirt, jean shorts, and armed with a black handgun. The dispatch further relayed to Deputy Murray that the suspects were last seen near a maroon Nissan Maxima that was parked in front of the Arco gas station store.

7. At approximately 7:44 a.m., Deputy Murray arrived on scene and saw a maroon Nissan Maxima parked in front of the Arco gas station store and observed a Hispanic male wearing a black shirt and blue jean shorts, later identified as RODRIGUEZ, sitting in the front driver's seat of the Nissan with the door open. RODRIGUEZ matched the clothing description given by

---

[1] I know the identities of Victim 1, Victim 2, and Victim 3, but I am not including their names in this affidavit because I anticipate this document will be publicly filed and wish to protect their identifies at this point in the investigation.

Victim 1 as the individual armed with a handgun. As Deputy Murray exited his vehicle, he also observed a Hispanic male, later identified as C.C., wearing a white shirt and white shorts, standing in front of the Arco gas station store smoking a cigarette. In C.C.'s hand, Deputy Murray saw a cigarette lighter and a tiny ball of a black tar-like substance that was wrapped in a clear plastic wrap. Deputy Murray recognized the substance to be black tar heroin. Deputy Murray also saw used needles inside the Nissan on top of the center console.

8.  Deputy Murray detained both C.C. and RODRIGUEZ and placed them both in the back of his patrol vehicle. While escorting C.C. to the back of his police vehicle, Deputy Murray asked C.C. if he was on probation or parole, to which C.C. stated he was on "AB-109," which is a term for Post Release Community Supervision ("PRCS"). While Officer Murray was placing RODRIGUEZ in the back of his patrol vehicle, he asked him if he was on probation or parole and RODRIGUEZ stated he was on parole for attempted murder. Deputy Murray used his radio to confirm RODRIGUEZ's parole status.

9.  After confirming that RODRIGUEZ was on parole and after C.C. said that he was on PRCS, Deputy Murray briefly searched the Nissan before returning to his vehicle to ask C.C. for his full name and date of birth. Officer Murray then confirmed C.C. was on PRCS.

10. After additional RSO units arrived, Deputy Murray moved C.C. to separate patrol unit.

4

### B. Deputy Murray Searches the Nissan and Finds a Loaded Glock-type 9mm Machinegun, Bearing No Legitimate Serial Number

11. Victim 1, and a second victim, Victim 2, were both inside the Arco gas station store when Deputy Murray arrived at the gas station. After securing both suspects, Deputy Murray went into the Arco gas station store as Victim 1 and Victim 2 were speaking with another Deputy who had arrived. The Victims reported that the guy in the jean shorts (an accurate description for RODRIGUEZ) had the firearm, and Deputy Murray asked specifically where RODRIGUEZ had the firearm on him, to which the Victims stated the firearm was on his lap.

12. Victim 1 (who said she was driving the Nissan) and Victim 2 (who said the Nissan belonged to her) gave Deputy Murray permission to search the Nissan. During a more thorough search of the Nissan, Deputy Murray found a black Glock-type 9mm pistol that was loaded with six rounds of 9mm ammunition. Deputy Murray found the firearm under the front passenger seat. It should be noted that Victim 1 and Victim 2 stated RODRIGUEZ was sitting in the front passenger seat prior to arriving at the gas station. Deputy Murray took a picture of the firearm under the seat before he seized it. Deputy Murray also noticed that the firearm was equipped for automatic fire. The firearm had a noticeable metallic/silverish selector switch, commonly referred to as "Glock Switch," affixed to the backplate giving it the capability of fully automatic fire.

### C. Statements of Victims

13. Deputy Murray then conducted a follow-up interview with Victim 1 and Victim 2. Victim 1 and Victim 2 reported they went to the San Manuel Casino with Victim 1's male friend and that male friend was friends with RODRIGUEZ and C.C. Victim 1's male friend left the Casino before RODRIGUEZ and C.C. asked Victim 1 for a ride to San Jacinto, and Victim 1 agreed. Before driving to San Jacinto, Victim 1 stopped by her home in Highland so she could change her clothes. The group then drove to Victim 2's home in Highland so Victim 2 could change her clothes. Victim 1 stated that as the group began driving to San Jacinto, she became nervous because RODRIGUEZ began talking on the phone and saying they were not going to get out of the car. Victim 1 then became afraid and stated that she needed to go home to her kids.

14. RODRIGUEZ asked Victim 1 to take him to a mobile home park where RODRIGUEZ picked up a substance Victim 1 believed was heroin. When RODRIGUEZ got back, he also pulled out a firearm and placed it on his lap. At this point, RODRIGUEZ was sitting in the front passenger seat of the Nissan. He also began to repeatedly eject the magazine from the firearm and re-insert the magazine into the firearm. RODRIGUEZ told Victim 1 that he was diabetic, and they needed to stop at a pharmacy so he could get a syringe. At one point, Victim 1 drove by a police vehicle and she flashed the Nissan's high beams at the vehicle to try to get the officer's attention, but her attempt did not work.

Rodriguez told Victim 1 to drive well because he would shoot it out with the police.

15. At that point, Victim 1 wanted to get away from C.C. and RODRIGUEZ. She told them she needed to use the restroom and pulled into the Arco gas station parking lot. When she stopped the Nissan, RODRIGUEZ started to become upset. Victim 1 then went into the Arco gas station store, hid in the bathroom, and called 911.

16. While Victim 1 was inside the Arco gas station store, Victim 2 reported that RODRIGUEZ would not let her leave the car, but ultimately told C.C. to take Victim 2 into the store to get Victim 1 or the keys and bring her/them back to the Nissan. RODRIGUEZ told C.C. to follow her into the store.

    D.    *Mirandized* **Statement of RODRIGUEZ to Deputy Murray**

17. Deputies arrested RODRIGUEZ and transported him to the local RSO Station. At the station, in a video recorded interview, Deputy Murray read RODRIGUEZ Miranda warnings from his department-issued card and RODRIGUEZ confirmed he understood his Miranda rights. RODRIGUEZ stated, in summary, that the group went to Victim 1's apartment and then RODRIGUEZ became nervous that the father of Victim 1's children would come home soon. RODRIGUEZ said he saw the firearm in Victim 1's apartment and so he grabbed it for his own protection.

    E.    **Prior Arrest in Which RODRIGUEZ Punched Pregnant Girlfriend in Stomach and Officers Find Firearm in His Room**

18. After learning about this incident from RSO and after reviewing documents from RODRIGUEZ's criminal history, I learned

7

that RODRIGUEZ had recently committed domestic violence. RODRIGUEZ was recently arrested for a parole violation after he punched Victim 3, his wife, who was 7 months pregnant, in the stomach and then slapped her phone out of her hand so she could not call 911. RODRGIGUEZ became upset with Victim 3 during a verbal dispute about RODRIGUEZ's heroin use. The incident occurred on or about March 31, 2022, but because RODRIGUEZ prevented her from making an immediate report, Victim 3 went to the City of Colton police station in person to make a report on April 4, 2022. Victim 3 provided officers with a photograph of a bruise that she sustained on her stomach which was no longer visible at the time Victim 3 made the report.

    19. The victim also provided RODRIGUEZ's parole agent with an address for where RODRIGUEZ was currently staying in the City of Hemet. Hemet Police Department Officers searched the residence and found a .22 caliber handgun in a room they concluded RODRIGUEZ was using.

    20. RODRIGUEZ is currently in Riverside County custody for a parole violation based on both the domestic violence incident as well as firearm possession/access during the arrest, but he is expected to be released from custody no later than July 20, 2022.

    **F.    Criminal History**

    21. On or about July 5, 2022, I reviewed certified conviction documents for RODRIGUEZ and learned that he has previously been convicted of the following felony crimes, including three violent felonies as defined in Title 18, United

States Code, Section 924(e)(2)(B), punishable by a term of imprisonment exceeding one year:

      a.   Assault with Deadly Weapon, in violation of California Penal Code Section 245(a)(1), in the Superior Court of the State of California, County of Lassen, case number CH026866, on or about September 24, 2009, for which he was sentenced to six years' prison. This conviction constitutes a violent felony as defined in Title 18, United States Code, Section 924(e)(2)(B) and was committed on an occasion different from the two other violent felonies RODRIGUEZ has committed.

      b.   Assault with Deadly Weapon, in violation of California Penal Code Section 245(a)(1), in the Superior Court of the State of California, County of Riverside, case number CSWF026169, on or about July 31, 2008, for which he was sentenced to 36 months' prison. This conviction constitutes a violent felony as defined in Title 18, United States Code, Section 924(e)(2)(B) and was committed on an occasion different from the two other violent felonies RODRIGUEZ has committed.

      c.   Attempted Murder, in violation of California Penal Code Sections 664 and 187, in the Superior Court of the State of California, County of Riverside, case number SWF023930, on or about July 11, 2008, for which he was sentenced to 9 years' prison. In this case, according to the felony complaint, RODRIGUEZ was charged with trying to murder four people (two John Does and two Jane Does) with a firearm. This conviction likely constitutes a violent felony as defined in Title 18, United States Code, Section 924(e)(2)(B) and was committed on an

occasion different from the two other violent felonies RODRIGUEZ has committed.

      d.    Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11377(a), in the Superior Court of the State of California, County of Riverside, case number SWF023971, on or about December 5, 2007, for which he was sentenced to 1 year and 4 months' prison.

    **G.**    **Interstate Nexus**

22.    I am an ATF Interstate Nexus Expert, and on or about June 27, 2022, I reviewed photographs of the ammunition and confirmed that the ammunition loaded within the 9mm Glock Type machinegun, bearing no legitimate serial number, was manufactured outside of the State of California. Because the ammunition was found in California, I believe that it has traveled in and affected interstate commerce.

    **H.**    **Examination of Suspected Machine Gun Conversion Device**

23.    ATF Firearms Enforcement Officer Christopher Cochran from the Firearms Technology Criminal Branch completed a Report of Technical Examination of the Polymer 80, 9mm caliber suspected machinegun and concluded the firearm was equipped with a machinegun conversion device commonly referred to as a Glock Switch. A Glock Switch is designed and intended to convert a semiautomatic, Glock-style pistol into a machinegun by utilizing an extended metal "leg" to push the trigger bar down and out of engagement with the firing pin as the slide closes, releasing the partially retracted firing pin to travel forward and fire a cartridge. When the trigger is depressed, the Glock Switch

allows a Glock-style pistol to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.

## V. CONCLUSION

24.  For all of the reasons described above, there is probable cause to believe that RODRIGUEZ has committed a violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1) (Armed Career Criminal in Possession of Ammunition).

Attested to by the applicant, ATF SA Paul Kirwan, in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 7th day of July, 2022.

_____
HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE